UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

RAYSEAN BROWN,

Defendant.

**DECISION AND ORDER**

6:25-CR-06046-EAW-MJP

---

# INTRODUCTION

Defendant Raysean Brown ("Defendant") stands accused by way of an indictment returned by a federal grand jury of a narcotics conspiracy between September 2023 and February 4, 2025, involving 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and 10 grams or more of a mixture and substance containing a detectable amount of a fentanyl analogue, in violation of 21 U.S.C. § 846 (count one), and possession of firearms in furtherance of the narcotics conspiracy in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count two). (Dkt. 24). If convicted as charged, Defendant faces a 15-year mandatory minimum incarceration sentence.

After a detention hearing held before the magistrate judge,[1] Defendant was ordered released upon conditions.[2] (Dkt. 17). The government appealed that decision to the

---

[1] At the time of the magistrate judge's release order, Defendant had not been indicted and instead, was charged by criminal complaint with a narcotics conspiracy involving 400 grams or more of fentanyl. (Dkt. 1).

[2] The conditions set by the magistrate judge included home incarceration (*i.e.*, 24-hour-a-day lock-down), and the posting of unsecured bonds in the amount of $90,000 and a $100,000 bond secured by two properties owned by Defendant's girlfriend's mother.

- 1 -

undersigned (Dkt. 30)[3] and oral argument was held on March 26, 2025, at which time the Court reserved decision (Dkt. 31).[4]

After carefully considering the record and the factors as set forth at 18 U.S.C. § 3142(g), the Court hereby revokes the release order and orders Defendant detained pending trial, based on its findings that there are no conditions of release that will reasonably assure the safety of any other person and the community.[5]

## FACTUAL BACKGROUND

Defendant is 33 years old, and a lifelong resident of the area with strong family support.[6] Defendant is in a relationship with a woman who is the mother of his 5-year old child, although they were not living together at the time of his arrest. Defendant has no prior criminal convictions, and his only prior arrest was in 2020 for a misdemeanor Driving While Intoxicated (resolved through a guilty plea to an infraction). At the time of his arrest,

---

(Dkt. 17). Initially the conditions set by the magistrate judge had required $200,000 bail "secured to the extent practicable" by real estate and cash. (*See* Dkt. 13 at 24).

[3]  The government filed its appeal on March 7, 2025 (Dkt. 18), and then filed an amended appeal on March 10, 2025 (Dkt. 30).

[4]  By the time of the oral argument before the undersigned, Defendant's assigned counsel had been replaced with new counsel due to a breakdown in communications. (Dkt. 27; Dkt. 28).

[5]  Although the government also moved for detention based on risk of flight, the Court does not reach that issue.

[6]  Family members and friends have submitted letters to the Court attesting to Defendant's character, they have appeared at the court appearances before the magistrate judge and the undersigned, and they have expressed their willingness to vouch for Defendant and sign bonds securing his release.

Defendant reported he was self-employed as a rapper, although Defendant's girlfriend was unaware that this was his purported employment.

Defendant was arrested at his residence[7] on Castlewood Drive in the City of Rochester on February 4, 2025, at around the same time search warrants were executed at the residence. Upon execution of the search warrants, law enforcement seized three firearms—two of which were loaded including one with a defaced serial number. Two of the firearms were immediately adjacent to a bag containing 72.5 grams of fentanyl as confirmed positive through a DEA Lab Report. (*See* Dkt. 29). Also seized was about $3,300 in cash, cell phones that according to the government contained evidence of drug trafficking, and various paraphernalia and tools for processing and bagging drugs for redistribution, including a kilo press, gas mask, chemical suit, rubber gloves, scales, a sifter, and cutting agent.

The government proffered that a confidential source—who had cooperated with law enforcement for over 15 months pursuant to a plea agreement and whose information was corroborated through "independent investigation, physical and electronic surveillance, and by information received independently and separately from other law enforcement agencies," (Dkt. 1 at ¶ 12)—had "advised DEA agents that [Defendant] was a violent drug

---

[7]     At the argument before the undersigned, defense counsel argued against the notion that Defendant was responsible for the items in the residence, citing to the fact that another individual was present upon execution of the search warrant. But Defendant told the USPO that he lived alone at the residence. (*See* Pretrial Services Report dated Feb. 10, 2025, at 1). And law enforcement surveillance supported the conclusion that Defendant resided at and sold drugs from the residence. (*See* Dkt. 1 at ¶¶ 36-62).

dealer that specialized in robbing other drug dealers, as well as distributing his own supply of fentanyl" (*id.* at ¶ 11).[8]  The confidential source stated that he had observed Defendant in possession of over half a kilogram of fentanyl at one time. (*Id.*).

A second confidential source also provided information that Defendant was a fentanyl drug trafficker whose customers included multiple individuals outside Monroe County who would travel to the area to conduct drug transactions with Defendant. (*Id.* at ¶ 13).  This source engaged in a controlled buy with Defendant and an individual believed to be his associate in February 2024. (*Id.* at ¶¶ 33-35).  This source identified a phone number associated with Defendant that was consistent with one of the cell phones seized upon execution of the search warrant. (*See* Dkt. 30 at 9).  And a third confidential source provided information that Defendant was a cocaine and fentanyl trafficker who had an alias of "Threatanyl." (Dkt. 1 at ¶ 16).

In addition, an undercover New York State Police investigator engaged in controlled buys of fentanyl from Defendant on numerous occasions—purchasing over 20 grams in September 2023 (*id.* at ¶¶ 22-23); about 20 grams in October 2023 (*id.* at ¶¶ 24-25); about 20 grams in December 2023 (*id.* at ¶¶ 26-29); and about 30 grams in late December 2023 (*id.* at ¶¶ 30-31).

---

[8]  The government proffered that two of the drug dealers robbed by Defendant were prosecuted in federal court before the undersigned. (*See* Dkt. 30 at 6-7).

## **LEGAL STANDARD**

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, sets forth the procedures for the release or detention of a person pending trial, sentence, and appeal. The procedures and standards for release or detention of a person pending trial are set forth at 18 U.S.C. § 3142. A defendant awaiting trial must be released unless the release will present a risk of flight or danger, or both, and no set of conditions can reasonably protect against those risks. *See United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (explaining that the Bail Reform Act codified "traditional presumption favoring pretrial release for the majority of Federal defendants" (quotation omitted)).

The government bears the burden of proof to establish risk of flight and/or danger, and that no conditions can reasonably protect against those risks. The burden of proof with respect to risk of flight is preponderance of the evidence. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). On the other hand, the Government must demonstrate by clear and convincing evidence that a defendant should not be released due to his risk of danger. *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). Clear and convincing evidence "means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *Id.* In other words, the evidence must support a conclusion of danger to the community "with a high degree of certainty." *Id.*

Although there is "only a limited group of offenders who should be denied bail pending trial," *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (citations and quotations omitted), when there is "a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently

compelling that detention is, on balance, appropriate," *Chimurenga*, 760 F.2d at 403 (quotations omitted).  While a prior record of violence or dangerous conduct "eases the government's burden of showing dangerousness, it is not essential.  The government's burden is only to prove dangerousness by clear and convincing evidence." *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991).

Because of the nature of the charges against Defendant, there is a rebuttable presumption pursuant to 18 U.S.C. § 3142(e)(3)(A) & (B) that no condition or combination of conditions will reasonably assure the appearance of Defendant and the safety of the community if Defendant is released.  *See United States v. Contreras*, 776 F.2d 51, 54-55 (2d Cir. 1985) (holding that a grand jury indictment establishes probable cause for purposes of the rebuttable presumption under the Bail Reform Act, and when faced with an indictment, the Court does not need to make an independent finding of probable cause).  The presumption shifts to Defendant "a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).  "[A] defendant must introduce some evidence contrary to the presumed fact[s] in order to rebut the presumption." *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).  If a defendant satisfies this burden of production and rebuts the presumption, it does not disappear; rather, the presumption "remains a factor to be considered among those weighed by the district court." *Mercedes*, 254 F.3d at 436.  Even in a presumption case, at all times the government retains the ultimate burden of persuasion. *Id.*

The statutory factors that a court must consider in making any detention decision are as follows:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves . . . a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). "[A] district court has broad discretion to determine how much weight to assign the factors listed in § 3142(g) based on the circumstances of a particular case." *United States v. Zhang*, 55 F.4th 141, 144 (2d Cir. 2022). As explained by the Second Circuit in *Zhang*:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*Id.* at 149-50 (citation omitted).

In reviewing a detention order of a magistrate judge, a district judge should not simply defer to the judgment of the magistrate judge, but rather must reach her own independent conclusions. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). "When making its *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001). "The rules of evidence do not apply in a detention hearing" and "the government may proceed by proffer." *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). But "[w]hether presented by proffer or direct evidence, courts retain the responsibility for assessing the accuracy of the Government's proof." *United States v. Enix*, 209 F. Supp. 3d 557, 573 (W.D.N.Y. 2016) (quoting *United States v. Goba*, 240 F. Supp. 2d 242, 247 (W.D.N.Y. 2003)); *see also United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986) (Court "retains the responsibility for assessing the reliability and accuracy of the government's information, whether presented by proffer or by direct proof."). However, "a detention hearing is not to serve as a mini-trial . . . or as a discovery tool for the defendant . . . [and therefore] a government proffer need not always spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *Martir*, 782 F.2d at 1145.

## ANALYSIS

The Court has considered the magistrate judge's reasoning, as well as the recommendation of the United States Probation Office ("USPO") in favor of release.[9] But upon this Court's de novo review, it respectfully disagrees with their conclusions and finds that the government has established by clear and convincing evidence that no reasonable conditions can protect against the danger posed by Defendant's release.

The nature and circumstances of the offenses with which Defendant is charged strongly favor detention. The offenses involve loaded firearms, lethal narcotics, and the penalties that Defendant faces are significant. Similarly, the strength of the evidence also strongly favors detention. The evidence consists of three confidential sources, controlled buys with an undercover officer, and a trove of incriminating evidence seized from a residence where Defendant admitted he resided alone. And consideration of the fourth § 3142(g) factor also strongly supports detention. These three factors lead to the conclusion that Defendant is a violent drug dealer engaged in the trafficking of lethal narcotics out of his residence where he operated a drug distribution center and possessed dangerous weapons.

Only the third § 3142(g) factor tips in favor of Defendant—because of his strong family and community support, lifelong ties to the area, and lack of criminal history. But on the other hand, Defendant has no apparent employment (other than his alleged drug

---

[9] As noted by the probation officer, the USPO does not consider the weight of the evidence, any rebuttable presumption, or the potential penalties, in making its assessment and recommendation.

trafficking) and the evidence proffered by the government supports the conclusion that he has been involved in dangerous drug trafficking activities for many years—he has just avoided detection up until now. Thus, while the lack of criminal history and strong family support admittedly give the Court some pause about whether to detain Defendant—and those facts may rebut the presumption in favor of detention—on the whole they are insufficient to overcome the other considerations favoring detention.

Thus, on the whole, the Court cannot conclude that the third § 3142(g) factor weighs sufficiently in favor of Defendant so as to overcome the other factors, all of which support detention. And while the magistrate judge put in place some strict conditions, the undersigned disagrees that they will reasonably protect against the serious danger posed by Defendant's release.

Therefore, based on its consideration of all the evidence and the factors set forth at § 3142(g), the Court concludes that the government has established by clear and convincing evidence that if released, Defendant would present a risk of danger that could not be reasonably protected through the imposition of conditions.

## CONCLUSION

For the foregoing reasons, the government's appeal of the magistrate judge's release order is granted, and the Court hereby orders pursuant to 18 U.S.C. § 3142(e) that defendant Raysean Brown be detained pending trial. Defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal. The Court further orders that Defendant be afforded reasonable opportunity for

private consultation with counsel. Finally, the Court directs that, on order of the Court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is confined shall deliver the Defendant to a United States Marshal for the purposes of his appearance in connection with any court proceeding.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   April 1, 2025
         Rochester, New York