UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**

RAYSEAN BROWN,  6:25-CR-06046-EAW-MJP

Defendant.

───────────────────────────────

## **BACKGROUND**

Defendant Raysean Brown ("Brown") stands accused by way of a superseding indictment returned on December 16, 2025,[1] of the following: (1) narcotics conspiracy involving 400 grams or more of fentanyl and 10 grams or more of para-fluorofentanyl, in violation of 21 U.S.C. § 846 (count 1); (2) four counts of possession with intent to distribute and distribution of 10 grams or more of a fentanyl analogue in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (counts 2, 3, 4 and 5); (3) one count of possession with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (count 6); (4) possession of firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count 7); and (5) various forfeiture allegations. (Dkt. 49).

On September 23, 2025, Brown filed a motion to suppress evidence seized pursuant to three search warrants: (1) a search warrant related to location information of a cell phone assigned number (626) 267-1100 through T-Mobile USA ("target cell phone") signed by

───────────────────────────────

[1] Brown was originally charged by criminal complaint filed January 28, 2025 (Dkt. 1), and then by indictment returned on March 18, 2025 (Dkt. 24).

- 1 -

Monroe County Court Judge Michael Dollinger on March 4, 2024, based on a supporting application signed by Drug Enforcement Administration (DEA) Special Agent Sabatino Smith ("SA Smith") (Dkt. 42-1); (2) a search warrant related to an Apple account associated with the target cell phone signed by Monroe County Court Judge Julie Hahn on May 21, 2024, based on a supporting application signed by DEA Special Agent Matthew Walker ("SA Walker") (Dkt. 42-2); and (3) a search warrant for 29 Castlewood Drive, Rochester, New York, signed by United States Magistrate Judge Mark W. Pedersen on January 28, 2025, based on a supporting application signed by SA Smith (Dkt. 42-3). In support of his motion to suppress, Brown submitted an affidavit asserting an expectation of privacy in the target cell phone and 29 Castlewood Drive. (Dkt. 42-4).

After briefing and oral argument before Judge Pedersen, to whom this case was referred pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) (Dkt. 26), he issued a thorough Report and Recommendation ("R&R") recommending that the undersigned deny the motion to suppress. (Dkt. 54). Judge Pedersen concluded that each of the search warrants was supported by ample probable cause, and even if they were not, the good faith exception (which Defendant did not address in his motion papers) applied. (Dkt. 54 at 9-33).

Brown filed objections to that R&R, arguing: (1) the application for the search of 29 Castlewood Drive "provided insufficient allegations that Mr. Brown conducts narcotics sales at 29 Castlewood Drive, nor that he keeps narcotics, paraphernalia, or narcotic proceeds at this residence," (Dkt. 55 at 3); (2) the good faith exception did not apply because the search warrant applications were based solely on information from law enforcement and confidential informants (*id.* at 4); (3) the March 2024 warrant for the

target cell phone was based entirely on information received from confidential informants (*id.* at 5-6); and (4) the May 2024 warrant for Brown's Apple account associated with the target cell phone was based on stale information (*id.* at 6).

The government filed a memorandum in opposition to Brown's objections. (Dkt. 57). As for the search warrant for 29 Castlewood Drive, the government highlighted that the warrant was supported by information from "three separate reliable confidential informants" and outlined "four separate purchases of fentanyl directly from Brown by an undercover officer and a controlled purchase by a confidential informant." (*Id.* at 4). Moreover, the warrant application detailed activity at the 29 Castlewood Drive location that was "consistent with Brown selling drugs from his residence." (*Id.*). The government argued that because 29 Castlewood Drive was Brown's residence and because he was dealing significant quantities of drugs, there was probable cause to believe that the residence would contain evidence of drug dealing. (*Id.*).

As for the target cell phone, the government pointed out that the investigation revealed that Brown used that cell phone to conduct drug trafficking activity. (*Id.*). A confidential informant detailed how Brown would be contacted on the target cell phone to arrange drug purchases, and that information was corroborated with a controlled purchase in February 2024. (*Id.* at 5-6). The government also argued that the approximate three-month period between the February 2024 controlled purchase and May 2024 search warrant did not render the probable cause stale. (*Id.* at 7-8). Finally, the government contended that the good faith exception applies even if the warrants lacked probable cause. (*Id.* at 8-9).

Oral argument was held before the undersigned on January 27, 2026, at which time the undersigned stated that she intended to overrule the objections and adopt the R&R in its entirety. The following constitutes the written Decision and Order of the Court.

## STANDARD OF REVIEW

This Court reviews Brown's objections under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Male Juv.*, 121 F.3d 34, 38 (2d Cir. 1997) (requiring a district court to make *de novo* determinations to the extent that a party makes specific objections to a magistrate's findings). Consistent with those obligations, the undersigned has carefully reviewed the subject search warrants and supporting affidavits, Brown's objections and the government's opposition, the R&R, and the underlying motion papers. Based on that review, it is apparent that the objections should be overruled and the R&R adopted in its entirety.

## DISCUSSION

As recognized by Judge Pedersen, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). "[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband

- 4 -

or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the validity of a search warrant:

> the duty of [the] court . . . is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed. A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant.

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (quotations and citations omitted); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("[A] reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate. . . ."). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236) (alteration in original). "[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant, and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (alteration in original) (citations omitted)).

With respect to the search warrant for 29 Castlewood Drive, it was supported by SA Smith's affidavit sworn to on January 28, 2025, which detailed his experience with drug trafficking investigations (Dkt. 42-3 at ¶¶ 4-6); information from March 2022 through 2023 that had been corroborated by a confidential source (CS-1) considered reliable by law enforcement about Brown's drug trafficking activities (including observing Brown in possession of over half a kilogram of fentanyl at one time, and CS-1's presence while Brown processed and packaged fentanyl for sale) (*id.* at ¶¶ 11-12); information from February 2024 corroborated by another confidential source (CS-2) considered reliable by law enforcement about communicating with Brown over the target cell phone, a controlled purchase of fentanyl by CS-2 from Brown and his associates in February 2024, and that Brown had multiple customers located outside Monroe County who would routinely travel to Monroe County to conduct drug transactions with Brown (*id.* at ¶¶ 13-15, 33-35); information from October 2024 corroborated by another confidential source (CS-3) considered reliable by law enforcement that Brown trafficked cocaine and fentanyl, went by the alias "Threatanyl," and rapped about making money from selling drugs (*id.* at ¶¶ 16-19); four fentanyl purchases by an undercover New York State Police investigator between September and December 2023 (*id.* at ¶¶ 22-31); observations by law enforcement from August 2024 through January 2025, of visitors from outside Monroe County to 29 Castlewood Drive for brief periods of time (*e.g.*, minutes) while Brown's vehicle was present or he was observed being present (*id.* at ¶¶ 38-62); observations of Brandon Owens at the residence (who was identified by CS-3 as selling drugs with Brown) on December 5, 2024, with Brown observed retrieving a small black bag from Brandon Owen's vehicle

before they both entered the residence together (*id.* at ¶¶ 58-60); a complaint from a nearby resident about suspicions of drug sales at the premises (*id.* at ¶ 63); and data from Brown's Apple iCloud account identifying two telephone numbers as "Licks" (slang for drug customers), with corroborating observations of the individuals associated with those telephone numbers visiting Brown's residence for brief encounters (*id.* at ¶¶ 64-65). Judge Pedersen set out this information and concluded that it provided ample probable cause for the search of 29 Castlewood Drive. (Dkt. 54 at 22-29). The undersigned agrees.

Brown seems to rely on the lack of any observed controlled drug sales at the residence or eyewitness observations of drugs being stored at the premises. (Dkt. 55 at 3). To be sure, as this Court has recognized, a "defendant's status as a drug dealer alone does not give rise to a fair probability that evidence of drug trafficking will be found in his home." *United States v. Williams*, 350 F. Supp. 3d 261, 267-68 (W.D.N.Y. 2018) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *United States v. Lahey*, 967 F. Supp. 2d 698, 712 n.16 (S.D.N.Y. 2013); *United States v. Kortright*, No. 10 CR 937 (KMW), 2011 WL 4406352, at *7 (S.D.N.Y. Sept. 13, 2011)). But here, the warrant application relied on far more than just Brown's status as a drug dealer. There were confirmed purchases of drugs from Brown and personal observations of the same by an undercover officer and confidential informants, and law enforcement observations through surveillance of activity consistent with drug sales at 29 Castlewood Drive. And the information supported a conclusion that Brown participated in a large-scale drug trafficking operation. *Williams*, 350 F. Supp. 3d at 268 ("[W]here there is a lack of evidence directly connecting a residence to drug trafficking activity, information that the

drug trafficking perpetrated by the defendant is large-scale in nature can support a probable cause finding to search the defendant's residence."). All of this, supported by SA Smith's opinion that Brown maintained evidence of his crimes at 29 Castlewood Drive (*see* Dkt. 42-3 at ¶¶ 7-8); *see United States v. Adams*, No. 6:24-CR-06081 FPG, 2025 WL 2391669, at *11 (W.D.N.Y. May 22, 2025) ("[P]robable cause determinations are frequently upheld in situations where a law enforcement officer provides an expert opinion that drug traffickers often maintain evidence of their crimes at their residences . . . even in the absence of any specific information connecting suspected drugs to those premises." (citation omitted)), *report and recommendation adopted*, No. 24-CR-6081-FPG, 2025 WL 2047892 (W.D.N.Y. July 22, 2025), was more than adequate to provide probable cause to search the residence.

The same conclusion applies to the state court search warrants related to the target cell phone. As recognized by Judge Pedersen, SA Smith's affidavit afforded Monroe County Court Judge Dollinger a substantial basis for concluding that probable cause existed to issue the warrant on March 4, 2024, for location information related to the target cell phone. (Dkt. 54 at 11-15). SA Smith's affidavit detailed, among other things, information from CS-1 about Brown's use of a drug phone to sell fentanyl to various customers, undercover purchases of fentanyl from Brown from September through December 2023,[2] and information from CS-2 about Brown's drug sales using the target

---

[2] Thus, Brown's argument in his objections that the March 2024 warrant was "based entirely on information received from confidential informants" (Dkt. 55 at 5) is not accurate.

cell phone (including a successful controlled purchase by CS-2 in February 2024 using that phone).  (Dkt. 42-1 at 3-5).

As also recognized by Judge Pedersen, SA Walker's affidavit afforded Monroe County Court Judge Hahn a substantial basis for concluding that probable cause existed to issue the warrant on May 21, 2024, for Apple account information associated with the target cell phone.  (Dkt. 54 at 15-22).  SA Walker's affidavit detailed, among other things, the undercover sales of fentanyl from Brown and then Brown's discontinuance of contact with the officer after multiple search warrants were executed on some of Brown's associates in January 2024, and the information from CS-2 including the successful controlled purchase by CS-2 in February 2024 using the subject cell phone number.  (Dkt. 42-2 at 5-6).  The Court further agrees with Judge Pedersen's thorough discussion of why Brown's contentions about staleness with respect to this warrant lack merit.  (Dkt. 54 at 20-22).  In other words, given the evidence of Brown's involvement in an ongoing large-scale drug trafficking operation, the gap of around three months between the controlled purchase of fentanyl involving the target cell phone and the issuance of the search warrant for Apple account information associated with that cell phone, did not render the probable cause of the warrant stale.  *See*, *e.g.*, *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) ("In investigations of ongoing narcotics operations, we have held that intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale."); *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) ("Narcotics conspiracies are the very paradigm of the continuing enterprises for

which the courts have relaxed the temporal requirements of non-staleness." (alteration and citation omitted)).

Finally, the Court also agrees with Judge Pedersen that even if the warrants lacked probable cause, the good faith exception applies. (*See* Dkt. 54 at 29-33). Brown makes no credible argument otherwise, nor does he seriously attempt to establish that one of the four circumstances triggering the exclusionary rules applies.[3]

---

[3] The four circumstances are: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; [or] (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)). "These exceptions reflect the general rule that, '[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Romain*, 678 F. App'x 23, 25 (2d Cir. 2017) (alteration in original) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). That standard plainly has not been met here.

## **CONCLUSION**

For the foregoing reasons, Brown's motion to suppress (Dkt. 42) is denied and the Court adopts the Report and Recommendation of Judge Pedersen (Dkt. 54) in its entirety.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    February 3, 2026
          Rochester, New York